**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| ANTHONY LOVE, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:25-cv-443 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| CCBCC, INC., *et al.*, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |
| | : | |

---

**ENTRY AND ORDER GRANTING, IN PART, DEFENDANTS CCBCC, INC. AND CHES PHYILLAIER'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (DOC. NO. 7); DENYING AS MOOT DEFENDANTS CCBCC, INC. AND CHES PHYILLAIER'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (DOC. NO. 5); AND, REMANDING ACTION TO STATE COURT**

---

This matter is before the Court upon the filing of Defendants CCBCC, Inc. and Ches Phyillaier's Motion to Dismiss Plaintiff's Amended Complaint (the "Motion") (Doc. No. 7).[1] Plaintiff Anthony Love ("Love") has brought the current employment action against Defendants CCBCC, Inc. ("CCBCC") and Ches Phyillaier ("Phyillaier") (together, "Defendants"), alleging three theories of race discrimination, in violation of Ohio law, and two theories under the federal Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"). (Doc. No. 6 at PageID 93-96.) At present, Defendants move to dismiss Love's Amended Complaint for Damages and Injunctive Relief (the "Amended Complaint") (Doc. No. 6) on the grounds that Love has failed to state a claim for any of his five causes of action. (Doc. No. 7 at PageID 101.) In particular,

---

[1] Also pending before the Court is Defendant CCBCC, Inc. and Ches Phyillaier's Motion to Dismiss Plaintiff's Complaint (Doc. No. 5), which shall be **DENIED AS MOOT**.

1

Defendants contend that Love has only offered the Court allegations which are either time-barred or wholly conclusory. (*Id.* at PageID 108-18.) Love objects, arguing that Defendants' Motion attempts to impermissibly hold the Amended Complaint to a higher standard than that of plausibility. (*See* Doc. No. 6 at PageID 120-21.)

Upon review, the Court shall **GRANT**, **IN PART**, Defendants' Motion. Additionally, for reasons discussed below, the Court has determined to **REMAND** this action to the Montgomery County Court of Common Pleas.

## I.  BACKGROUND

As alleged in the Amended Complaint, Love, a black man, began working for CCBCC as a CDL driver in around August of 2022. (Doc. No. 6 at PageID 85.) For a reason yet to be articulated, CCBCC finally terminated Love's employment in September 2024. (*Id.* at PageID 92-93.) Nevertheless, Love claims that he suffered continuous unfavorable treatment during his two-year stint with CCBCC. (*See id.* at PageID 85.) For example, Love asserts that Phyillaier, Love's white supervisor, expressed disgust upon learning that Love was the father of a biracial child. (*Id.*) Furthermore, Love claims that Phyillaier repeatedly disciplined him for conduct that Phyillaier did not discipline white employees for, such as forgetting products in their trucks. (*Id.* at PageID 85-86.) Alleged discipline aside, Love also suggests that Phyillaier tampered with his equipment, while Phyillaier did not tamper with the equipment of Love's white counterparts. (*Id.*) Love allegedly reported these apparent instances of discrimination four times, in August of 2023, October of 2023, March of 2024, and August of 2024, respectively, to no avail. (*Id.* at PageID 86-91.)

In April of 2024, Love's physician allegedly recommended that Love take a leave of absence from his position at CCBCC. (*Id.* at PageID 90.) Love applied to CCBCC for the use of

2

FMLA leave on or around April 18, 2024. (*Id.*) That application was approved shortly thereafter and Love purportedly began his FMLA leave on or around April 19, 2024. (*Id.* at PageID 91.) But Love's leave of absence did not come without obstacles. In late May 2024, while on FMLA leave, Love contacted CCBCC's labor relations business partner to check on the status of his three prior reports of alleged discrimination. (*Id.*) Then, in June 2024, CCBCC allegedly terminated Love's employment while he was still on FMLA leave. (*Id.*) Even still, Love challenged the termination, was reinstated, and returned from FMLA leave to his old position at CCBCC on or around July 30, 2024. (*Id.*)

Following his termination and receipt of the Ohio Civil Rights Commission's Notice of Right to Sue, Love brought the instant action in the Montgomery County Court of Common Pleas on November 14, 2025. (*See* Doc. No. 3.) Defendants removed the matter to this Court on December 19, 2025. (Doc. No. 1.) Specifically, Defendants have invoked the Court's federal question jurisdiction over Love's FMLA claims and the Court's supplemental jurisdiction over Love's state law race discrimination claims. (*Id.* at PageID 2-4.)

On January 9, 2026, Defendants moved to dismiss Love's Complaint (Doc. No. 5), but that motion was rendered moot when Love filed his Amended Complaint on January 15, 2026 (Doc. No. 6). By his Amended Complaint, Love alleges three claims of race discrimination, in violation of Ohio law and only Ohio law, and two causes of action for violation of the FMLA. (Doc. No. 6 at PageID 93-96.) To that end, Love alleges that he was subjected to: discrimination by disparate treatment, in violation Ohio Rev. Code § 4112.02, *et seq.* (Count I); racially motivated retaliation, in violation of Ohio Rev. Code § 4112.02, *et seq.* (Count II); FMLA retaliation (Count III); FMLA

3

interference (Count IV); and unlawful aiding, abetting, and inciting of discrimination, in violation of Ohio Rev. Code § 4112.02, *et seq.* (Count V[2]).  (*Id.*)

Defendants filed their current Motion on January 29, 2026.  (Doc. No. 7).  Love timely filed his response in opposition to Defendants' Motion on February 5, 2026 (Doc. No. 8), and Defendants submitted a final reply in support of their Motion on February 19, 2026 (Doc. No. 9). As such, Defendants' Motion is now ripe for review and decision.

## II.  <u>STANDARD OF REVIEW</u>

"The purpose of a Rule 12(b)(6) motion to dismiss is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 897 (S.D. Ohio 2013) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is facially plausible when it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard is not the same as a probability standard, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).  Thus, if a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When ruling on a motion to dismiss, the Court must accept the factual allegations of the complaint as true and construe them in a light most favorable to the non-moving party. *Id.* at 554-

---

[2] In the Amended Complaint, Love incorrectly titles this claim "Count VII."

55. However, the Court is not bound to accept as true a legal conclusion couched as a factual allegation. *Id*. at 555-56. "In evaluating a motion to dismiss [a court] may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016) (internal quotation marks omitted).

## III.  ANALYSIS

To start, the Court acknowledges that, at the pleading stage, plaintiffs in employment cases like the one at bar cannot be expected to state their causes of action so as to satisfy the evidentiary standards of summary judgment. *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). This is to say that plaintiffs are not required to allege the *prima facie* elements of their employment claims at the pleading stage. *Id.* Instead, "the ordinary rules for assessing the sufficiency of a complaint apply" and a plaintiff must simply "give the defendant fair notice of what [his] claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 511-12 (citation and internal quotation marks omitted). Therefore, in reviewing Love's Amended Complaint here, the Court refers to the *prima facie* elements of Love's claims only where helpful and does not strictly rely on such standards when determining whether Love has stated a claim upon which relief may be granted.

Against this backdrop, the Court considers the viability of Love's FMLA claims. Finding that Love's allegations under the FMLA fail as a matter of law, the Court concludes by addressing the need to remand this action to the Montgomery County Court of Common Pleas and accordingly declines to opine on the merits of Love's state law claims of race discrimination.

### a.  FMLA

Fundamentally, "[t]he FMLA entitles qualifying employees to up to twelve weeks of unpaid leave each year if … an employee has a serious health condition that makes the employee unable to perform the functions" of their position. *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 506 (6th Cir. 2006) (quoting *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005)) (internal quotation marks omitted).  Further safeguarding employees' FMLA rights, the FMLA also entitles qualifying employees "to be reinstated to their previous position, or 'to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment,'" so long as they return to work within twelve weeks.  *Edgar*, 443 F.3d at 506 (quoting 29 U.S.C. § 2614(a)(1)). Because employee protections under the FMLA are characterized as rights, an employer's failure to honor those rights in contravention of the FMLA will give rise to an entitlement theory of liability.  *Edgar*, 443 F.3d at 507.  This "entitlement theory" has been more commonly dubbed, the theory of FMLA interference.  *Id.*  On the other hand, a litigant may bring an FMLA action pursuant to a theory of retaliation against "employers that act against employees specifically *because* those employees invoked their FMLA rights."  *Edgar*, 443 F.3d at 508 (citing *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 885 (7th Cir. 2005)) (emphasis in original).

In the instant action, Love has pled claims for both FMLA retaliation and FMLA interference.  The Court considers each theory in turn.

### 1. Count III – FMLA Retaliation

Regarding FMLA retaliation, Defendants argue that Love has done nothing to allege a causal connection between Love's use of FMLA leave and adverse employment action.  (Doc. No. 7 at PageID 114.)  In particular, Defendants contend that Love can establish no more than temporal

proximity between the two occurrences, and, even that temporal tie is flimsy.  (*Id.*)  For his part, Love offers no meaningful argument in response.[3]

Typically, a plaintiff seeking to establish a claim of FMLA retaliation must demonstrate that: "(1) he was engaged in a statutorily protected activity; (2) [the defendant] knew that he was exercising his FMLA rights; (3) he suffered an adverse employment action; and (4) a causal connection existed between the protected FMLA activity and the adverse employment action." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283 (6th Cir. 2012) (citing *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012)).  The final factor, causation, triggers a "minimal" burden at the pleading stage, but plaintiffs "must still 'put forth some credible evidence that that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity.'"  *Callan v. AutoZoners, LLC*, No. 1:21-CV-01479, 2022 WL 204927, at *8 (N.D. Ohio Jan. 24, 2022) (quoting *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)).  In this vein, only in the rarest of cases, where an employer has immediately retaliated against an employee, will temporal proximity alone adequately establish a causal connection.  *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 524-25 (6th Cir. 2008) (citing *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002)) ("[I]n rare cases, temporal proximity alone may suffice to show a causal connection").

After review, the Court finds that Love's cause of action for FMLA retaliation suffers from two fatal defects.  First, it is unclear what adverse employment action Love is alleging to be retaliatory relative to his use of FMLA leave.  Love began his FMLA leave in April 2024 and was

---

[3] Love does rely on the Court's decision in *Warner v. Health Carousel, LLC*, No. 3:24-cv-323, 2025 WL 1207750 (S.D. Ohio Apr. 25, 2025) to support the proposition that Love only needed to recite the *prima facie* elements of his FMLA claims for those claims to survive the current Motion.  Candidly, this notion flies in the face of well-known pleading standards and misrepresents Judge Rice's analysis in *Warner*.  Therefore, the Court disregards Love's FMLA arguments as objectively frivolous and warns plaintiff's counsel against such gross misrepresentations of the law in this or any other matter before the Court.

terminated while on leave.  Love was able to secure reinstatement and presumably complete the full term of FMLA leave to which he was entitled, but the adverse action taken while Love was on FMLA leave could potentially rise to the level of retaliation with the help of some factual enhancement.  Love was finally terminated from his position at CCBCC in September 2024 and Love alleges, in a wholly conclusory fashion, that this firing constituted FMLA retaliation.  Love's final discharge could also be considered retaliatory with the benefit of factual enhancement.  However, Love does not choose between the two for purposes of alleging Defendants' liability or otherwise attempt to establish both terminations as equally retaliatory.  With nothing more than conclusory allegations and an unclear identification of the retaliatory action Love is challenging, Defendants can hardly be said to be on fair notice of the FMLA retaliation claim against them.

Secondly, Love has done nothing to allege a causal connection between his exercise of protected FMLA rights and adverse employment action.  This is true whether Love challenges his temporary termination in June 2024 or his final termination in September 2024.  In either circumstance, Love faced adverse employment action after allegedly making protected reports of race discrimination.  The resulting inference is that Defendants' alleged animus was seemingly directed solely toward Love's race, rather than his use of FMLA leave.  Indeed, even in referring to the supposed harassment Love had to endure upon his return from FMLA leave, the Amended Complaint alleges that:

> Upon returning from FMLA leave, Markgraff began tampering with Love's time records by clocking Love back in after Love clocked himself out and then forcing Love to do more work *despite other Caucasian employees being available*.

(Doc. No. 6 at PageID 91 (emphasis added).)  Even if Love had the benefit of temporal proximity, this allegation, and others like it, referencing Caucasian comparators, connects Love's allegations to his race discrimination claims, but not his FMLA claims.  It would seem that alleged

8

discrimination just happened to coincide with Love's FMLA leave, not because of it. Therefore, the Court finds that Love has failed to state a claim of FMLA retaliation and **GRANTS** Defendants' Motion as such.

### 2. Count IV – FMLA Interference

The Court looks now to Love's cause of action for FMLA interference. Defendants contend that Love's FMLA interference claim must fail because he failed to allege that he was either entitled to FMLA benefits or that CCBCC denied Love those benefits. (Doc. No. 7 at PageID 115-16.) In particular, Defendants argue that Love has not alleged he had FMLA leave available to him at the time he was terminated, and, at any rate, Love does not claim that he informed CCBCC of any future intent to take FMLA leave when he returned to work on July 30, 2024. (*Id.*) Again, Love offers no meaningful response in defense of his FMLA interference claim.

When faced with a claim of FMLA interference, "'[t]he issue is simply whether the employer provided its employee the entitlements set forth in the FMLA ....'" *Arban v. West Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998)). To that end, for a plaintiff's interference theory to succeed, he must prove that: "(1) [he] was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) [he] was entitled to leave under the FMLA, (4) [he] gave the employer notice of [his] intention to take leave, and (5) the employer denied the employee FMLA benefits to which [he] was entitled." *Edgar*, 443 F.3d at 507 (citing *Walton*, 424 F.3d at 485).

The Court finds Defendants' arguments to be particularly poignant regarding Love's FMLA interference claim. Love claims that "[CCBCC] terminated Love in anticipation of his need to take additional FMLA leave," but there is no indication that Love had FMLA leave

available to him and Love does not allege that he informed CCBCC of any intent to take additional FMLA leave after returning to work on or around July 30, 2024.  To be sure, Love was on FMLA leave from mid-April 2024 to late-July 2024.  Even accounting for the fact that Love spent some time in June 2024 disputing an erroneous termination, absent a factual allegation to the contrary, the Amended Complaint reads as though Love exhausted all of his FMLA leave between April and August of 2024.  Further, if Love did not apprise CCBCC of a future need to take FMLA leave, then CCBCC cannot have fired him in anticipation of that future need.  Accordingly, the Court **GRANTS** Defendants' Motion with respect to Love's FLMA interference claim.

### b.  Remand Required

The Court *sua sponte* addresses the need to remand this action to the Montgomery County Court of Common Pleas.  Recall that Defendants removed Love's case to this Court based upon the Court's federal question jurisdiction over Love's FMLA claims. (Doc. No. 1 at PageID 2-5.) Love's race discrimination claims have been pled only under state law and, therefore, Defendants invoked the Court's supplemental jurisdiction over those discrimination claims.  (*Id.*)  Yet, by this Order, all that remains of Love's case are his state law race discrimination claims.

"[F]ederal courts are courts of limited jurisdiction: [w]hen they do not have (or no longer have) authorization to resolve a suit, they must hand it over."  *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 28 (2025).  "'If at any time before final judgment it appears that the district court lacks subject matter jurisdiction,' the case must be 'remanded' to state court."  *Id.* (quoting 28 U.S.C. § 1447(c)).  Additionally, district courts may decline supplemental jurisdiction over state law claims where "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).

In the matter at hand, the Court has now dismissed Love's FMLA claims and those federal claims were the only thing giving the Court original jurisdiction over Love's Amended Complaint. The Court surely cannot exercise supplemental jurisdiction over Love's allegations of race discrimination without an independent source of original jurisdiction.  28 U.S.C. § 1367(a).  The court finds then that Love's state law race discrimination claims belong where they started in the first place: the Montgomery County Court of Common Pleas.  Thus, the Court **DECLINES** ruling on Defendants' Motion with respect to Love's pending claims for race discrimination and this matter shall be **REMANDED** to the state court.

## IV.  CONCLUSION

Whereas, the Court hereby **GRANTS**, **IN PART**, Defendants CCBCC, Inc. and Ches Phyillaier's Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 7).  The Court specifically rules as follows:

1. Defendants' Motion is **GRANTED** with respect to Love's FMLA claims and Counts III and IV of the Amended Complaint are, therefore, **DISMISSED**;

2. Pursuant to the Court's discretion under 28 U.S.C. § 1367(c)(3), the Court **DECLINES RULING** upon Defendants' Motion with respect to Love's allegations of race discrimination, *i.e.*, Counts I, II, and V of the Amended Complaint;

3. Defendants CCBCC, Inc. and Ches Phyillaier's Motion to Dismiss Plaintiff's Complaint (Doc. No. 5) is **DENIED AS MOOT**; and,

4. The Clerk is directed to **REMAND** this action to the Montgomery County Court of Common Pleas and **TERMINATE** this matter on the Court's

docket.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, April 7, 2026.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

12